UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAUREN A.,

                        Plaintiff,

v.                                                                      8:18-CV-0244
                                                                        (TWD)
ANDREW M. SAUL,[1]
Comm'r of Soc. Sec.,

                        Defendant.

_____

APPEARANCES:                                          OF COUNSEL:

SCHNEIDER & PALCSIK                         MARK A. SCHNEIDER, ESQ.
 Counsel for Plaintiff
57 Court Street
Plattsburgh, NY 12901


U.S. SOCIAL SECURITY ADMIN.               JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

Currently before the Court, in this Social Security action filed by Lauren A. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or the "Commissioner") pursuant to

42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion

for judgment on the pleadings.  (Dkt. Nos. 13; 17.)  For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is granted and Defendant's motion for judgment on the

pleadings is denied.

---

[1]  Andrew M. Saul became the Commissioner of Social Security on June 17, 2019.  The Clerk of
Court is respectfully directed to amend the caption.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1983, making her 31 years old at the alleged onset date and 33 years

old at the date of the ALJ's decision.  Plaintiff reported obtaining an associate's degree in

accounting and previous work as a bookkeeper, child monitor, telephone operator, and universal

caregiver (as identified by the vocational expert).  Plaintiff initially alleged disability due to

lower back pain, lumbosacral spondylosis without myelopathy, fibromyalgia with headaches and

depression, hypoparathyroidism, and hypothyroidism.

### B.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on February

12, 2015, alleging disability beginning August 14, 2013.  Plaintiff's application was initially

denied on May 20, 2015, after which she timely requested a hearing before an Administrative

Law Judge ("ALJ").  Plaintiff appeared at an administrative hearing before ALJ Brian LeCours

on January 13, 2017.  (Administrative Transcript 39-79.[2])  On March 16, 2017, the ALJ issued a

written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 19-38.)  On

February 23, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner.  (T. 1-7.)

### C.    The ALJ's Decision

The ALJ found Plaintiff meets the insured status requirements of the Social Security Act

through March 31, 2017, and has not engaged in substantial gainful activity since August 14,

---

[2]  The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing
system.  All other page references identified by docket number are to the page numbers assigned
by the Court's CM/ECF electronic filing system.

2013, the alleged onset date. (T. 24.) Plaintiff's degenerative disc disease of the lumbar spine, hypertension, thyroid disorder, Grave's disease, migraine headaches, hip bursitis, bilateral sacroiliitis, fibromyalgia, obesity, affective disorder, and anxiety disorder were found to be severe impairments. (*Id*.) However, she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 24-26.) Specifically, the ALJ considered Listings 1.00 (musculoskeletal system), 4.00 (cardiovascular system), 9.00 (endocrine disorders), and 12.00 (mental disorders). (*Id*.) The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except

> she can occasionally perform pedal controls (bilateral limitation); she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but is never able to climb ladders, ropes, and scaffolds; she can occasionally perform overhead reaching (bilateral limitation); she must avoid concentrated exposure to noise, defined as Noise Intensity Level 4 and above; she must avoid concentrated exposure to hazardous conditions such as unprotected heights and dangerous machinery (not including automotive machinery, as she is able to drive); and the work must consist of unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time.

(T. 26.) She is unable to perform any past relevant work; however, she can perform other jobs existing in significant numbers in the national economy. (T. 30-31.) The ALJ therefore concluded Plaintiff is not disabled.

### D.    The Parties' Briefings on Their Cross-Motions

Plaintiff makes several arguments in support of her motion for judgment on the pleadings. (Dkt. No. 13 at 24-48.[3]) She argues the ALJ erred by not finding her multiple

---

[3] Plaintiff submitted a motion to allow for a reply brief. (Dkt. No. 18.) The Court denied Plaintiff's motion and indicated it will not consider Plaintiff's reply brief when determining this appeal. (Dkt. No. 19.)

sclerosis ("MS") to be a severe impairment at Step Two and she meets or equals Listing 11.09 for MS. (*Id*. at 24-31.) Plaintiff further asserts the Appeals Council erred in not considering a "new and material retrospective diagnosis" of MS from her treating physician. (*Id*. at 27-28.)

Plaintiff contends she is unable to perform any work because of a combination of impairments. (*Id*. at 31-34.) Additionally, Plaintiff argues she is disabled by her spinal disorder in combination with her other impairments and she equals Listing 1.04. (*Id*. at 34-35.) Plaintiff also contends the ALJ did not explain why she did not meet or equal Listing 1.04. (*Id*. at 35.) Plaintiff argues she does not have the RFC to perform work because of her non-exertional limitations caused by pain and the ALJ erred by failing to credit her subjective testimony of pain even though it was strongly supported by the objective medical evidence. (*Id*. at 35-37.) She also maintains the ALJ did not consider her pain as a non-exertional limitation in determining her RFC and erred by not considering the non-exertional effects of her documented pain in combination with her other impairments on her RFC. (*Id*. at 37.)

Plaintiff claims she is disabled by her morbid obesity in combination with her other impairments and the ALJ did not discuss the weight he gave to her morbid obesity in determining she could perform sedentary work despite finding it to be a severe impairment at Step Two. (*Id*. at 37-43.) Plaintiff argues she is disabled by her fibromyalgia, anxiety, depression, thyroid disorder, Grave's disease, migraine headaches, and mental illness in combination with her other impairments. (*Id*. at 43.) She contends the ALJ erred by not crediting her testimony. (*Id*. at 43.)

In response, Defendant argues substantial evidence supports the Commissioner's final

decision (Dkt. No. 17 at 6-18.[4]) Defendant asserts that, during the period at issue, no medical

source ever diagnosed Plaintiff with MS. (*Id*. at 7-8.) Defendant contends the Appeals Council

properly exercised its discretion and did not reopen the ALJ's decision. (*Id*. at 8-9.)

Additionally, Defendant argues any error at Steps Two or Three was harmless because the ALJ

found Plaintiff's impairments severe and continued with the sequential evaluation, the ALJ's

Step Three determination is supported by substantial evidence, and Plaintiff's impairments did

not satisfy Listing 1.04. (*Id*. at 9-11.) Defendant also argues the ALJ properly assessed

Plaintiff's credibility and her obesity, and the ALJ's RFC is supported by substantial evidence.

(*Id*. at 11-18.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d

856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence. *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence

---

[4]  The Court notes Defendant contends several of Plaintiff's arguments lack adequate citation to
the record and are not amenable to a response because they are either a recitation of her
subjective complaints or are conclusory without meaningful argument. (Dkt. No. 17 at 6-7.)
Defendant specifically declines to respond to Plaintiff's arguments at II.A. ("[Plaintiff] does not
have the exertional ability to perform sedentary work.") and II.E. ("[Plaintiff] was disabled by
fibromyalgia, anxiety, depression,[] thyroid disorder[,] Grave's disease[,] migraine headaches[,]
and mental illness in combination with her other impairments.") as they are not amenable to a
response. (Dkt. Nos. 17 at 7; 13 at 32-34, 43.)

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Substantial Evidence Does Not Support the ALJ's Analysis of Plaintiff's Alleged Multiple Sclerosis

Plaintiff argues the ALJ erred by not finding her multiple sclerosis MS to be a severe

impairment at Step Two and contends she meets or equals Listing 11.09 for MS. (*Id*. at 24-31.)

Plaintiff points out that consultative examiner Nader Wassef, M.D., diagnosed Plaintiff with MS

and argues if the ALJ wanted further explanation, he should have contacted treating physician

Edward Mazdzer, M.D. (*Id*. at 30.) Plaintiff also contends the ALJ's failure to give great weight

to Dr. Wassef's opinion that Plaintiff had marked limitations in standing, walking, climbing and descending stairs, bending, squatting, lifting, and operating foot controls is not supported by any evidence in the record. (*Id*. at 30, n. 8.) Plaintiff further argues the Appeals Council erred in not considering a "new and material retrospective diagnosis" of MS from Dr. Mazdzer. (*Id*. at 27-28.)

In response, Defendant argues no medical source ever diagnosed Plaintiff with MS during the period at issue. (*Id*. at 7.) Defendant also contends in the absence of an actual diagnosis from an acceptable medical source, Plaintiff's alleged MS does not meet the definition of a medically determinable impairment and it would have been improper for the ALJ to find otherwise. (*Id*. at 7-8.) Defendant points out the August 2017 treatment note submitted to the Appeals Council is dated five months after the end of the period at issue and five months after Plaintiff's date last insured. (*Id*. at 8; T. 10.) Thus, the Appeals Council exercised its discretion and did not reopen the ALJ's decision. (*Id.*) As the Appeals Council explained, the treatment note (which did not formally diagnose MS) post-dated the period at issue, was not contrary to the weight of the evidence, and did not establish a reasonable probability that the additional evidence would change the outcome of the decision. (*Id*. at 8-9; T. 1-4.) Defendant also argues any error at Steps Two or Three was harmless because the ALJ found Plaintiff's impairments severe and continued with the sequential evaluation. (*Id*. at 9-10.)

The Social Security Administration ("SSA") "must have objective medical evidence from an acceptable source to establish the existence of a medically determinable impairment that could reasonably be expected to produce an individual's alleged symptoms." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); 20 C.F.R. § 404.1521. SSA will not use a claimant's statement of symptoms, a diagnosis, or a medical opinion to establish

the existence of an impairment(s). 20 C.F.R. 20 C.F.R. § 404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id*. "If an individual alleges symptoms, but the medical signs and laboratory findings do not substantiate any medically determinable impairment capable of producing the individual's alleged symptoms, [SSA] will not evaluate the individual's symptoms at step two of [the] two-step evaluation process." SSR 16-3p, 2016 WL 1119029, at *3.

Here, the ALJ found there was not a medically determinable impairment of MS and explained while Plaintiff's treating neurologist Dr. Mazdzer "indicated a 'most likely diagnosis' was multiple sclerosis, no diagnosis was rendered." (T. 24, 417-20, 458-61.) As set forth above, Plaintiff argues the ALJ erred by not finding her MS to be a severe impairment at Step Two and also she meets or equals the listing for MS. (Dkt. No. 13 at 24-31.) While not fully persuaded by these arguments, the Court finds remand is required for the following reasons.

The Court's review does indicate confusion over whether Plaintiff was formally diagnosed with MS. At first glance, it appears a diagnosis of MS may not have been clearly articulated in the treatment records, with primary care physician Mary Halloran, M.D., stating in February 2017, Plaintiff's prognosis was fair with an unclear etiology of symptoms. (T. 48, 677.) It is unclear to the Court whether Dr. Halloran was referring to symptoms related to possible MS or possible fibromyalgia, but it appears likely Dr. Halloran treated Plaintiff for fibromyalgia and chronic fatigue while neurologist Dr. Mazdzer treated Plaintiff for MS. In her February 2017 assessment, Dr. Halloran did not indicate a diagnosis of MS, but noted hypothyroid, chronic hypercalcemia, and fibromyalgia with symptoms including fatigue, back pain, and body aches. (T. 676.) At the administrative hearing in January 2017, Plaintiff testified

Dr. Halloran diagnosed her with fibromyalgia and chronic fatigue. (T. 48.) The Court notes

Plaintiff did not specifically testify as to her alleged MS at the hearing, nor was she specifically

asked about MS. (T. 46-65.)

However, the Court is also not convinced there is a clear absence of an actual diagnosis

from an acceptable medical source, as Defendant has argued, or that the ALJ properly considered

the objective evidence related to Plaintiff's alleged MS. (Dkt. No. 17, at 7-8.) Defendant cites

20 C.F.R. § 404.1529 in arguing Dr. Mazdzer's indication that Plaintiff possibly had MS was not

a formal diagnosis and did not satisfy the requirements of the Act. (*Id*. at 7.) To be sure,

previous decisions have noted SSR 06-3p indicates an acceptable medical source opinion or

diagnosis is necessary to establish existence of a medically determinable impairment, but this

SSR has since been rescinded. SSR 06-03p, 2006 WL 2329939 (rescinded by Fed. Register

Notice Vol. 82, No. 57, p. 15263 (Mar. 27, 2017)); *see Showers v. Colvin,* 13-CV-1147

(GLS/ESH), 2015 WL 1383819, at *6, n. 12 (N.D.N.Y. Mar. 25, 2015); *Anderson v. Colvin*, 12-

CV-1008 (GLS/ESH), 2013 WL 5939665, at *3 (N.D.N.Y. Nov. 5, 2013). Regardless, the Court

is not convinced the record lacks objective medical evidence from an acceptable source to

establish the existence of medically determinable MS that could reasonably be expected to

produce Plaintiff's alleged symptoms associated with this impairment. SSR 16-3p, 2016 WL

1119029, at *3.

The Court notes the ALJ did not further discuss the evidence detailed below relating to

Plaintiff's alleged MS, but rather succinctly concluded it was not medically determinable. (T.

24.) The Court does not endeavor to reweigh the evidence which was before the ALJ, but the

Court's review of the record reveals a longitudinal aspect to Plaintiff's alleged MS contributing

to the lack of clarity regarding a formal diagnosis. *See Warren v. Comm'r of Soc. Sec.*, 15-CV-

1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the

substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh

the evidence presented at the administrative hearing . . . . [Rather], [a]bsent an error of law by

the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to

support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)), *report-*

*recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*,

830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to

reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 642

(2d Cir. 1983)); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting it is not the role

of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's

resolution of conflicting evidence' where that resolution is supported by substantial evidence)

(quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Lamay v.*

*Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).

The record indicates in December 2012, Plaintiff had an MRI of her head with the reason

for the exam noted as "multiple sclerosis in a 29-year-old female" and the mention of previous

MRI scans of the brain from September 2008 and March 2009. (T. 296-97.) The December

2012 scan showed severe chronic left maxillary sinusitis and mild right maxillary, left frontal

and ethmoid sinusitis. (*Id*.) In a March 2015 function report, Plaintiff indicated she was under

ongoing evaluation for MS. (T. 212.) On April 9, 2015, a treatment note from Plattsburg Health

Group indicated Plaintiff had short term memory loss, confusion, and decreased concentration

and there was a need to rule out MS. (T. 441-42.) It was also noted a head CT from November

2014 was within normal limits and a brain MRI was ordered. (T. 442.) On April 17, 2015, a

treatment note indicated an MRI had revealed a new lesion. (T. 437-38.) The record contains a

brain MRI dated April 20, 2015, which was performed due to left eye pain and a history of optic neuritis. (T. 449.) The MRI indicated several subcortical and periventricular white matter abnormalities with several of these lesions appearing to have improved-regressed and some of the lesions being new when compared to the prior examination from December 2012. (T. 450.) There were no definite abnormalities seen in the optic nerves, but there appeared to be one lesion showing enhancement suggesting it was an active lesion seen in the lateral aspect of the left occipital lobe. (*Id.*)

In a treatment note dated April 24, 2015, neurologist Dr. Mazdzer indicated Plaintiff had developed left optic neuritis in 2008 and an MRI of the brain revealed white matter changes. (T. 413.) He noted there was a long discussion about possible etiologies, primarily MS, and she had bloodwork done looking for MS mimics which was unremarkable. (*Id.*) Plaintiff underwent a series of four MRIs of the brain revealing static changes through 2012 and she "still was informed that the most likely underlying diagnosis is multiple sclerosis but the decision ultimately was made to wait on starting disease modifying therapy until she developed more neurologic signs or symptoms." (*Id.*) Plaintiff's past medical history at the April 24, 2015, office visit listed MS as part of her problem list. (*Id.*) Dr. Mazdzer also indicated:

> Review of the MRIs performed in 2008 through 2012 as well as most recent MRI reveals nonspecific white matter changes most notably in the left parietal region adjacent to the posterior horn of the lateral ventricle. On the most recent study there are a couple more scattered abnormalities in the higher left parietal lobe region. There is no diffusion restriction with these.

(T. 415.) Dr. Mazdzer listed MS as an assessment and noted:

> Finally I had a long discussion with her again about the probability that she has multiple sclerosis. As mentioned in 2008, the most likely explanation for an episode of optic neuritis is multiple sclerosis although not 100%. This brings up the concept of 'benign

MS' where patients can have an underlying autoimmune inflammatory demyelinative disorder and not necessarily require treatment. Without any new clinical events, she is still comfortable with waiting to start disease modifying therapy (DMT). Obviously, she has many medical issues that have developed over the past few years that are complicating matters. Ultimately DMT might add to some of these issues unfortunately.

(*Id*.)

On April 30, 2015, consultative examiner Dr. Wassef diagnosed MS and noted Plaintiff had recently been told her symptoms could be due to MS. (T. 428, 432.) Dr. Wassef noted this diagnosis was made by Dr. Mazdzer because of optic neuritis and Plaintiff had brain scans in the past showing minor changes, but her last MRI from April 2015 revealed an active lesion and new spots. (T. 428.) On May 5, 2015, a treatment note from Plattsburgh Health Group indicated a diagnosis had been made by Dr. Mazdzer of slow-moving MS with the indication it was "slowly progressing so no treatment indicated at this time." (T. 435-36.) At the initial determination dated May 20, 2015, Plaintiff's MS was listed as severe. (T. 86.)

In a July 2015 disability report, Plaintiff noted she was getting more bloodwork done to try to find an answer as to why she was unable to stay awake for more than a few hours and she indicated a diagnosis of MS. (T. 239.) She also reported Dr. Mazdzer follows her MS symptoms. (T. 239, 243.) In a recent medical treatment report in January 2017, Plaintiff indicated her neurologist had put things on hold for treating her MS and had stated since it was slow progressing, he would rather her work on maintaining her endocrine levels. (T. 267.)

In evidence submitted to the Appeals Council subsequent to the ALJ's decision, Dr. Mazdzer stated in August 2017, he believed

> she now has relapsing remitting MS with changes neurologically both in time and space. Presently she has just seen a rheumatologist who believes that she may have fibromyalgia. Extensive blood work apparently does not show evidence of an underlying

inflammatory rheumatologic disorder. This also would argue for her having MS having started with left optic neuritis in 2008. As I have discussed all along, MS most likely is the explanation that we were waiting for pending further clinical events or changes on neuro imaging.

(T. 10.)

Finally, a reviewing court will adopt the ALJ's findings where supported by substantial evidence. *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 266 (N.D.N.Y. 2009) ("If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'") (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

Here, the Court does not reach a finding on whether Plaintiff's MS should have been found severe or to meet Listing 11.09, as Plaintiff argues. (Dkt. No. 13 at 24-31.) Rather, the Court is not convinced substantial evidence supports the ALJ's conclusion indicating Plaintiff's alleged MS is not a medically determinable impairment. In this case, the ALJ did not find this impairment medically determinable and, therefore did not consider it at the subsequent steps in the sequential evaluation. However, because it is unclear whether it should have been found medically determinable and a subsequent conclusion made on its severity, the Court cannot find any potential error regarding the ALJ's consideration of Plaintiff's alleged MS to be harmless. Remand is therefore required for further consideration of this impairment.

### B.    Plaintiff's Other Arguments

Because remand is necessary and the ALJ will be required to issue a new decision, the Court declines to reach findings on Plaintiff's other arguments pertaining to the Listings, her other impairments, evidence submitted to the Appeals Council, the ALJ's analysis of Plaintiff's

RFC, and the ALJ's evaluation of her symptoms.  (Dkt. No. 13 at 27-28, 31-47.)  However, on remand, the ALJ should conduct a new analysis of the evidence of record relating to the Listings, Plaintiff's other impairments, her RFC, and her symptoms.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated:  September 6, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge